

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Matthew Specht*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

MHS/PLEA.AGR
2022R00918

May 8, 2024

Lanny Breuer, Esq.
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956

        Re: <u>Plea Agreement with Keaton Langston</u>

Dear Mr. Breuer:

      This letter sets forth the plea agreement between your client, Keaton Langston ("LANGSTON") and the United States Attorney for the District of New Jersey ("the Office"). The Office's offer to enter into this plea agreement will expire on May 21, 2024, if a signed copy is not received by the Office on or before that date.

<u>Charge</u>

      Conditioned on the understandings specified below, the Office will accept a guilty plea from LANGSTON to an Information, which charges him with conspiring to commit health care fraud, contrary to 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349. If LANGSTON enters a guilty plea and is sentenced on this charge, and otherwise fully complies with all of the terms of this agreement, the Office will not initiate any further criminal charges against LANGSTON for, from in or around April 2017 through in or around November 2021, conspiring to commit health care fraud in connection with orders for durable medical equipment, compounded medications, and diagnostic laboratory tests.

      However, in the event that a guilty plea in this matter is not entered for any reason or the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, LANGSTON agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by LANGSTON may be commenced against him, notwithstanding the expiration of the limitations period after LANGSTON signs the agreement.

Sentencing

The violation of 18 U.S.C. § 1349 charged in the Information to which LANGSTON agrees to plead guilty carries a statutory maximum prison sentence of ten years and a statutory maximum fine which is the greatest of: (1) $250,000; (2) twice the gross amount of any pecuniary gain that any persons derived from the offense; or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon LANGSTON is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. The Office cannot and does not make any representation or promise as to what Guidelines range may be found by the sentencing judge, or as to what sentence LANGSTON ultimately will receive.

Further, in addition to imposing any other penalty on LANGSTON, the sentencing judge, (1) will order LANGSTON to pay an assessment of $100 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing; (2) may order LANGSTON to pay restitution pursuant to 18 U.S.C. § 3663 et seq.; 3) must order criminal forfeiture pursuant to 18 U.S.C. § 982(a)(7); (4) may order LANGSTON, pursuant to 18 U.S.C. § 3555, to give notice to any victims of his offense; and (5) pursuant to 18 U.S.C. § 3583, may require LANGSTON to serve a term of supervised release of not more than three years, which will begin at the expiration of any term of imprisonment imposed. Should LANGSTON be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, LANGSTON may be sentenced to not more than two years' imprisonment, in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Restitution Agreement

LANGSTON agrees to make full restitution for all losses resulting from the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense. The calculation of the losses resulting from the offense of conviction is ongoing; however, the parties agree that the loss amount is at least $51,166,032.36. The parties further agree that any direct or

indirect remuneration fees that can be shown prior to sentencing to have been refunded to the health care programs by the defendant will be credited to LANGSTON to reduce the restitution amount.

### Rights of The Office Regarding Sentencing

Except as otherwise provided in this agreement, the Office reserves its rights to take any position with respect to the appropriate sentence to be imposed on LANGSTON by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, the Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of LANGSTON's activities and relevant conduct with respect to this case.

### Stipulations

The Office and LANGSTON agree to stipulate at sentencing to the statements set forth in the attached Schedule A, which hereby is made a part of this plea agreement. This agreement to stipulate, however, cannot and does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties. To the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence. Moreover, this agreement to stipulate on the part of the Office is based on the information and evidence that the Office possesses as of the date of this agreement. Thus, if the Office obtains or receive additional evidence or information prior to sentencing that they determine to be credible and to be materially in conflict with any stipulation in the attached Schedule A, the Office shall not be bound by any such stipulation. A determination that any stipulation is not binding shall not release either the Office or LANGSTON from any other portion of this agreement, including any other stipulation. If the sentencing court rejects a stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court was within its discretion and authority to do so. These stipulations do not restrict the Office's rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

### Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A, the Office and LANGSTON waive certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.

Forfeiture

As part of his acceptance of responsibility, LANGSTON agrees to forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, LANGSTON obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, as charged in the Information, and all property traceable to such conspiracy, which LANGSTON agrees was approximately $10,038,295.

LANGSTON further agrees that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, and that the United States is therefore entitled to forfeit substitute assets equal to the value of the forfeitable property described above, in an amount not to exceed $10,038,295 (the "Money Judgment"). LANGSTON consents to the entry of an order requiring him to pay the Money Judgment, in the manner described below (the "Order"), and that the Order will be final as to the defendant prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made pursuant to this agreement, by (i) electronic funds transfer, as directed by the Office; or (ii) postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating LANGSTON's name and case number on the face of the check, and delivered to the United States Attorney's Office, District of New Jersey, Attn: Asset Forfeiture and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102. LANGSTON further agrees that the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

LANGSTON waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. LANGSTON understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure at the guilty plea proceeding. LANGSTON waives any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.  It is further understood that any forfeiture of LANGSTON's assets shall not be treated as

satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

LANGSTON further agrees that no later than the date he enters his plea of guilty he will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If LANGSTON fails to provide a complete and accurate Financial Disclosure Statement by the date he enters his plea of guilty, or if this Office determines that LANGSTON has intentionally failed to disclose assets on his Financial Disclosure Statement, LANGSTON agrees that that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

## Immigration Consequences

LANGSTON understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in his being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. LANGSTON understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. LANGSTON wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. LANGSTON understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, LANGSTON waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

## Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, the Office will bring this agreement to the attention of other prosecuting offices, if requested to do so.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against LANGSTON. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs

Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against LANGSTON.

No provision of this agreement shall preclude LANGSTON from pursuing in an appropriate forum, when permitted by law, an appeal, collateral attack, writ, or motion claiming that LANGSTON received constitutionally ineffective assistance of counsel.

No Other Promises

This agreement constitutes the plea agreement between LANGSTON and the Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

CAROLINE SADLOWSKI
Attorney for the United States
Acting Under the Authority
Conferred By 28 U.S.C § 515


By: /s/ Matthew Specht
    MATTHEW SPECHT
    Assistant U.S. Attorney


APPROVED:

ARI B. FONTECCHIO
Chief, Opioid Abuse Prevention and Enforcement Unit

      I have received this letter from my attorney, Lanny Breuer, Esq. My attorney and I have discussed it and all of its provisions, including those addressing the charge, sentencing, restitution, stipulations, waiver, forfeiture and immigration consequences. I understand this letter fully. I hereby accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____      Date: 5-14-24
Keaton Langston

      I have read and discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, restitution, stipulations, waiver, forfeiture and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____      Date: 5/15/24
Lanny Breuer, Esq.

## Plea Agreement with Keaton Langston ("LANGSTON")

### Schedule A

1. The Office and LANGSTON recognize that the United States Sentencing Guidelines are not binding upon the Court. The Office and LANGSTON nevertheless agree to the stipulations set forth herein and agree that the Court should sentence LANGSTON within the Guidelines range that results from the total Guidelines offense level set forth below. The parties further agree that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level.

2. The version of the United States Sentencing Guidelines effective November 1, 2021 applies in this case.

### Conspiracy to Commit Health Care Fraud

3. The applicable guideline is U.S.S.G. § 2B1.1. *See* U.S.S.G. § 2X1.1(a). Because the offense of conviction does not have a statutory maximum term of imprisonment of 20 years or more, this guideline carries a Base Offense Level of 6. U.S.S.G. § 2B1.1(a)(2).

4. Because the offense involved losses totaling more than $25,000,000 but not more than $65,000,000, the Specific Offense Characteristic results in an increase of 22 levels. U.S.S.G. § 2B1.1(b)(1)(L).

5. Because LANGSTON was convicted of a Federal health care offense involving a Government health care program and the loss amount associated with that offense was more than $20,000,000, the offense level is increased by 4 levels. U.S.S.G. § 2B1.1(b)(7)(iii).

6. Because the offense involved sophisticated means and LANGSTON intentionally engaged in or caused the conduct constituting the sophisticated means, the Specific Offense Characteristic results in an increase of 2 levels. U.S.S.G. § 2B1.1(b)(10)(C).

7. Because the defendant was between a minimal participant and a minor participant in the offense, the offense level is decreased by 3 levels. U.S.S.G. § 3B1.2.

8. No other Specific Offense Characteristics apply. Accordingly, the total offense level is 31.

### **Acceptance of Responsibility and Plea**

9. As of the date of this letter, it is expected that LANGSTON will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offenses and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility. If all of these events occur, and LANGSTON's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate. See U.S.S.G. § 3E1.1(a) and Application Note 3.

10. As of the date of this letter, it is expected that LANGSTON will assist authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Offices to avoid preparing for trial and permitting the Offices and the court to allocate their resources efficiently. At sentencing, these Offices will move for a further 1-point reduction in LANGSTON's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) LANGSTON enters a plea pursuant to this agreement, (b) these Offices in their discretion determines that LANGSTON's acceptance of responsibility has continued through the date of sentencing and LANGSTON therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) LANGSTON's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

11. If LANGSTON establishes at sentencing that he both has no criminal history points and meets the other criteria in U.S.S.G. § 4C1.1, he will be entitled to a further two-level reduction in his offense level, resulting in a total Guidelines offense level of 26; otherwise, LANGSTON's total Guidelines offense level will be 28 (the "Total Offense Level").

12. The parties agree not to seek or argue for any upward or downward departure, adjustment or variance not set forth herein. The parties further agree that a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 26 or 28, as set forth above, is reasonable.

13. LANGSTON knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 28. These Offices will not file any appeal, motion, or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from the agreed total Guidelines offense level of 26. The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category. The

provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

14. Both parties reserve the right to oppose or move to dismiss any appeal, collateral attack, writ, or motion barred by the preceding paragraph and to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph. Moreover, the preceding paragraph does not apply to:

a. Any proceeding to revoke the term of supervised release.

b. A motion for a reduction of the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

c. An appeal from the denial of a motion for a reduction of the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) on the grounds that the court erred in finding that there were no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances in denying the motion as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).